IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JESUS RODRIGUEZ SANTIAGO, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 11-476 |
| | : | |
| MICHAEL ASTRUE | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |
| | : | |
| Diamond, J. | : | August 6, 2012 |

**MEMORANDUM**

    Plaintiff Jesus Rodriguez Santiago seeks review of the Social Security Commissioner's denial of Plaintiff's application for supplemental social security income. I will sustain in large part Plaintiff's Objections to the Magistrate's Report and Recommendation, and remand to the Commissioner.

    **I.**    **Background**

    At the time of Plaintiff's application, he was 47-years old, and alleged that he was disabled because of his inability to communicate in English combined with the following impairments: right hand limitations, hepatitis C, arthritis, leg problems, bipolar disorder, mixed personality disorder, and drug addiction. See Record at 15, 73. Mr. Rodriguez Santiago had previously worked as a warehouse packager. See Record 444-45. After his claim was denied on February 20, 2008, Plaintiff timely requested a hearing. See Record at 73.

    On July 23, 2009, the ALJ held a hearing at which Plaintiff was represented by a non-attorney representative. See Record at 437-39; 20 C.F.R. § 416.1505. Plaintiff testified to his impairments and employment experience. Id. at 439-64. Vocational Expert Bruce Martin opined

that given Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could perform representative occupations at the light exertion and sedentary levels. Id. at 466-70.

In his August 14, 2009 decision, the ALJ found that Plaintiff suffers from four severe impairments: bipolar disorder, alcoholism, degenerative joint disease of the right wrist, and hepatitis C. See Record at 15, 17. He further found that Plaintiff has the residual functional capacity to perform the following tasks without constant supervision: 1) light work that does not require him to reach overhead with his right arm, and 2) simple, repetitive work. See Record at 20. Finally, relying on Mr. Martin's testimony, the ALJ found that there are light exertion jobs Plaintiff can perform that exist in significant numbers in the national economy: usher and ticket taker (45,000 jobs nationally and 1,000 jobs in the region), and inspector (280,000 jobs nationally, and 4,600 jobs in the region). He could also perform sedentary jobs: inspector (40,000 jobs nationally and 1,500 jobs in the region) and surveillance systems monitor (13,000 jobs nationally and 250 jobs in the region). See Record at 22, 466-70. Accordingly, the ALJ concluded that Plaintiff was not disabled and denied his application for SSI benefits.

After the Appeals Council affirmed, Plaintiff filed this action, challenging the Commissioner's decision. After receiving Plaintiff's Motion for Summary Judgment and Request for Review and Defendant's Response, I referred the matter to the Magistrate. *(Doc. Nos. 14, 18, 27.)* In her Report and Recommendation, the Magistrate concluded that the ALJ's decision should be affirmed. Plaintiff timely objected, and the Commissioner has responded to those Objections. *(Doc. Nos. 29, 31.)*

## II. Legal Standards

### A. Review of Determination Below

I must review *de novo* each issue addressed in the Magistrate's Report and Recommendation to which Plaintiff has raised a timely and specific Objection. 28 U.S.C. § 636(b)(1); see also Sample

v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  I may "accept, reject, or modify, in whole or in part, the [Magistrate's] findings and recommendations."  28 U.S.C. § 636(b)(1). It is also within my discretion to rely on the Magistrate's proposed findings and recommendations. See United States v. Raddatz, 447 U.S. 667, 676 (1980).

I must determine whether "substantial evidence" supports the ALJ's decision. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)).  If substantial evidence supports the ALJ's decision, I must uphold it even if I would have made different factual findings. Hartranft, 181 F.3d at 360.  I may not undertake a *de novo* review of the ALJ's decision, nor may I reweigh the evidence of record. Monsour, 806 F.2d at 1190.

    B.  Disability Determination

To qualify for SSI benefits, a claimant must be "disabled" under the Social Security Act and applicable regulations.  The claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (internal quotations omitted).  A claimant is unable to engage in any substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step evaluation process.  See 20 C.F.R. § 404.1520.  Should the ALJ determine at Step One that the claimant is presently engaged in substantial gainful activity,

disability benefits will be denied. Plummer, 186 F.3d at 427.  At Step Two, if the claimant fails to show that he suffers from "severe impairments," he is ineligible for disability benefits.  20 C.F.R. § 404.1520(c).  At Step Three, the ALJ compares the claimant's credibly established impairments to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d).

If a claimant does not suffer from a "listed" impairment or its equivalent, the analysis proceeds to Steps Four, which requires the ALJ to consider whether the claimant retains the "residual functional capacity" to perform previous work. 20 C.F.R. § 404.1520(d).  RFC is a measure of the activities a claimant can perform despite his impairments. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001).

If the claimant is unable to resume a former occupation, the evaluation moves to Step Five: the ALJ must determine whether there are a significant number of other jobs in the national economy that the claimant can perform, consistent with his impairments, age, education, past work experience, and residual functional capacity. 20 C.F.R. § 404.1520(f).  At Step Five, the ALJ "will generally consult the Dictionary of Occupational Titles, a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." See Boone v. Barnhart, 353 F.3d 203, 206 (3d Cir. 2004).  "The Social Security Administration has taken administrative notice of the reliability of the job information contained in the Dictionary of Occupational Titles." Burns v. Barnhart, 312 F.3d 113, 126 (3d Cir. 2002) (citing 20 C.F.R. § 416.996(d)). In performing the Step Five analysis, the ALJ typically will rely upon the testimony of a vocational expert. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether or not he is disabled. See 20 C.F.R. § 404.1523.

**III.     Discussion**

Plaintiff objects to the Magistrate's conclusions that the ALJ properly: 1) rejected the opinion of the SSA's consulting psychologist regarding Plaintiff's mental impairments; and 2) relied on Mr. Martin's testimony in concluding that Plaintiff is able to perform various light exertion jobs.  In addition, Plaintiff objects to the Magistrate's failure to consider his contention that even if he could perform the sedentary jobs identified by Mr. Martin, Plaintiff is nonetheless disabled under the applicable "medical vocational guidelines."

   A.  Psychological Evaluation

At the SSA's request, psychologist Daniel Schwarz, Ph.D evaluated Plaintiff and opined as follows:

> The prognosis is fair as long as the claimant continues to pursue ongoing outpatient psychiatric and psychological therapies.
>
> In my opinion, this applicant is not currently capable of managing his personal funds in a competent manner.
>
> He has a borderline ability to understand, retain and follow instructions, a borderline ability to sustain attention to perform simple repetitive tasks, borderline ability to relate to others, including fellow workers and supervisors, and a below average ability to tolerate stress and pressures associated with day-to-day activities.

Record at 148-49.  In an evaluation checklist appended to his report, Dr. Schwarz concluded that Plaintiff suffered from marked restrictions in a wide range of areas, including his abilities to: understand, remember, and follow detailed instructions; make judgments on simple work-related decisions;  interact appropriately with the public, supervisors, and co-workers; and  respond appropriately to routine work pressures. Id. at 150.

Plaintiff argues that the ALJ failed to consider Dr. Schwarz's opinion that Plaintiff "was incapable of handling his own money and suffered from marked restrictions in a wide array of areas." *(Doc. No. 29 at 8.)*  I agree.

5

The ALJ summarized Dr. Schwarz's evaluation as follows:

> The [plaintiff] had a psychological consultative examination, in January 2008. He stated that he did not think he could work, because of his physical limitations. He denied having any psychiatric hospitalizations, but had previously been involved in drug detoxification programs, and had been in a methadone treatment program since April 2007. He lived with his wife and children, and his wife handled all the housekeeping chores. He stated that he attended NA meetings, and his methadone treatment program, and went to church every week, but had no other social activities. He admitted that he had not stopped drinking, but did not drink every day, and the examining psychologist noted that he smelled of alcohol. On examination, his mood was depressed and anxious. His thoughts were goal-directed and spontaneous. He stated that he hears voices. He was oriented to person, place, and time, but he displayed concentration deficits. His information and intelligence appeared to be in the borderline range. His remote and recent past memory was intact. His immediate retention and recall were in the borderline range. He reported having an adequate sleep pattern, and his appetite was normal (Exhibit 3F).

Record at 18-19.

To qualify as a disability, mental impairments must result in at least two of the following limitations: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; repeated episodes of decompensation, each for an extended duration. 20 C.F.R. § 404, subpt. P, App. 1, § 1204(B). These are commonly referred to as the "Paragraph B criteria."

Dr. Schwarz's observations notwithstanding, the ALJ found that "[i]n activities of daily living, the claimant has mild restrictions. The claimant's therapy records do not indicate any significant problems in the claimant's ability to attend to his personal needs." Id. at 19. In support, the ALJ cited to Plaintiff's treating psychiatrist Dr. Jesus Herrera, who reported that Plaintiff was well-dressed, took his medication as prescribed, and timely attended his appointments. The ALJ also relied on Plaintiff's testimony that he took public transportation by himself, drew and painted, and attended Sunday church services. Id. at 19.

Although the ALJ had the discretion to give greater weight to Dr. Herrera's opinion and lesser weight to that of Dr. Schwarz, he could not do so without adequate explanation. Rather, the ALJ is required to "give some indication of the evidence that he rejects and his reason(s) for discounting that evidence." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000) (remanding because the ALJ "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him").

Here, the ALJ neither mentioned (nor explained why he discounted) Dr. Schwarz's opinion that Plaintiff "is essentially dependent on his wife for all of his [activities of daily living] needs" and is not "capable of managing his personal funds in a competent manner." Record at 146, 148. Instead, the ALJ cited only to Dr. Herrera's therapy records, making "no mention of any of these significant contradictory findings, leaving [me] to wonder whether he considered and rejected them, considered and discounted them, or failed to consider them at all." Fargnoli, 247 F.3d at 43-44.

Similarly, the ALJ ignored Dr. Schwarz's report in concluding that Plaintiff has only moderate difficulties in social functioning. Record at 19. Once again, the ALJ cited only to Dr. Herrera's reports, not even mentioning Dr. Schwarz's conclusion that Plaintiff suffers from marked social function difficulties.

The Magistrate states that "[b]ecause the evidence of record contradicts Dr. Schwarz's finding of such significant limitations, the ALJ properly declined to rely upon his assessment." *(Doc. No. 27 at 22.)* Once again, although the ALJ was free to give the record evidence such weight as he thought it deserved, he was not free simply to ignore significant contradictory evidence. Nor was the Magistrate free to substitute her own analysis for that of the ALJ. See Fargnoli, 247 F.3d at 44 n.7 ("The grounds upon which an administrative

7

order must be judged are those upon which the record discloses that its action was based." (quoting SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)).

Defendant argues that the ALJ explained at the hearing that he would ignore Dr. Schwarz's opinion because it was based primarily on Plaintiff's own complaints. *(Doc. No. 31 at 2 (citing Record at 471.))* Defendant misstates the record and offers inapposite case law. *(Id.)* The cases on which Defendant relies hold that an expert's mere recitation of a claimant's subjective complaints is not entitled to any weight. See, e.g. Hatton v. Comm'r of Soc. Sec., 131 F. App'x 877, 879 (3d Cir. 2005). Dr. Schwarz did not merely repeat Plaintiff's complaints, however. On the contrary, Dr. Schwarz offered his opinion as to Plaintiff's limitations based on both Plaintiff's descriptions and the Doctor's own observations. Record at 150.

Contrary to Defendant's argument, the ALJ never explained—either at the hearing or in his decision—why he rejected Dr. Schwarz's opinion. During the hearing, the ALJ said only that he did not incorporate the Doctor's report into the hypothetical question he posed to Mr. Martin because the report "was based on what the claimant said," and the ALJ already incorporated those statements into the hypothetical. Record at 471.

In sum, the ALJ was required to state whether and why he gave Dr. Schwarz's opinion little weight. On the present record, I cannot determine if the ALJ even considered Dr. Schwarz's opinion. Accordingly, I will sustain Plaintiff's objection to this portion of the Magistrate's Report and Recommendation. Fargnoli, 247 F.3d at 43-44.

B. Testimony of Vocational Expert

At Step Five, a vocational expert is typically asked: 1) to evaluate how a particular RFC may affect the claimant's available range of work, or 2) to identify occupations that the claimant is able to perform and the existence of those occupations in the national economy. See Podedworny,745

8

F.2d at 218. In making a Step Five determination, the ALJ often will rely on the SSA's "medical vocational guidelines." See 20 C.F.R. pt. 404, subpt. P. App. 2, § 200.00 (b). These guidelines direct the ALJ to make a finding of disability or non-disability based on a claimant's particular vocational profile, including age, education, work experience, and residual functional capacity. Id.

Because the ALJ cannot finally determine a claimant's RFC until after the administrative hearing, he or she will often pose RFC-related questions to the vocational expert in the form of hypotheticals. The ALJ may rely on the expert's response only if the hypothetical "fairly set[s] forth every credible limitation" suffered by the claimant. Plummer v. Apfel, 186 F.3d 422, 431 (3d Cir. 1999); see also Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record."). Although an ALJ need not include every impairment alleged, "the hypotheticals posed must 'accurately portray' the claimant's impairments and the expert must be given an opportunity to evaluate those impairments as contained in the record." Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 206 (3d Cir. 2008 (quoting Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005)).

The ALJ described to Mr. Martin a hypothetical claimant purportedly with Plaintiff's limitations, and asked what jobs, if any, existed in the national economy that this claimant could perform. As I have described, Mr. Martin identified usher and ticket taker at the light exertion level, inspector at the light and sedentary levels, and surveillance systems monitor at the sedentary level. Record 466-70. The ALJ explicitly relied on this testimony in concluding that although Plaintiff cannot return to his previous work as a packager, he can perform other jobs that exist in substantial numbers in the national economy. Record at 22.

Plaintiff argues that because the hypothetical question did not accurately reflect his limitations, the ALJ could not properly rely on Mr. Martin's answer. *(Doc. No. 29 at 13.)* The

Magistrate rejected this argument, and Plaintiff objects. I will sustain the Objection in part.

*Plaintiff's Language Limitation*

The ALJ found that Plaintiff is not able to read, write, or speak English, and is therefore considered "illiterate" for disability evaluation purposes. Record at 23; see 20 CFR §§ 404.1564, 416.964. The ALJ's hypothetical to Mr. Martin did not, however, provide that the claimant is unable to communicate in English.

Defendant argues—and the Magistrate agrees—that the ALJ and Mr. Martin adequately accounted for Plaintiff's inability to communicate in English. *(Doc. No. 27 at 33.)* They note that: 1) the ALJ told Mr. Martin that Plaintiff received an eighth grade education in Puerto Rico; 2) Mr. Martin observed Plaintiff at the hearing working with a Spanish-English interpreter; and 3) Mr. Martin heard Plaintiff testify that he could not speak or understand English. *(Id.)* Mr. Martin also stated that he was "taking into consideration the language problem." Record at 469.

Once again, an ALJ may consider the testimony of a vocational expert in response to a hypothetical question only if the question accurately portrays the claimant's physical and mental limitations. See Podedworny, 745 F.2d at 218. Because the ALJ's hypothetical included no English language limitation, I cannot determine whether Mr. Martin's response to the question reflected Plaintiff's inability to read, write, or speak English. This uncertainty is particularly troubling because even though Mr. Martin testified that he considered Plaintiff's "language problem," Mr. Martin concluded without explanation that Plaintiff could work as an usher and ticket taker—a conclusion the ALJ found conformed to the Dictionary of Occupational Titles. As I describe at length below, however, the DOT provides that these positions require varying levels of English language skill. See Dep't of Labor, Dictionary of Occupational Titles §344.667-010 (1991). This strongly suggests that in answering the hypothetical, Mr. Martin did not adequately take into account Plaintiff's significant language limitation. See Boone v. Barnhart, 353 F.3d 203,

10

206 (3d Cir. 2004). Because the ALJ thus erred in relying on that answer, I will sustain Plaintiff's Objection to that portion of the Magistrate's Report and Recommendation.

*Plaintiff's Mental Limitations*

Plaintiff also argues that the hypothetical was inadequate because the ALJ did not include Plaintiff's moderate difficulties in concentration, persistence, and pace. I do not agree.

The ALJ determined at Steps Two and Three that Plaintiff suffers from the following mental limitations identified as Paragraph B criteria: 1) moderate difficulties in social functioning; 2) moderate difficulties in concentration, persistence or pace; and 3) one or two episodes of decompensation, each of extended duration. Record at 19; see 20 C.F.R. § 404, subpt. P, App. 1, § 1204(B).

As the ALJ correctly noted, these limitations are considered in evaluating whether the severity of mental impairments renders a claimant *per se* disabled. Record at 20. These broad Paragraph B limitations are not necessarily part of the RFC assessment performed at Steps Four and Five. Rather, at these Steps the ALJ must specify the actual degree of the claimant's functional limitations. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). That is what the ALJ did here.

In the hypothetical question he posed to Mr. Martin, the ALJ described the degree of Plaintiff's mental limitations as follows:

> The ability to understand and remember complex and detailed instructions, limited. Can remember and understand simple one and two-step instructions. Basic memory processes are intact. Can perform simple, routine, repetitive work in a stable environment and carry out very short and simple instructions or complete a normal work day without exacerbation of the psychological symptoms. Can interact appropriately with the general public. Can function in production oriented jobs requiring new, independent decision making. Can perform repetitive work activities without constant supervision. That's, that's the psychiatric limitations.

Record at 466.

Plaintiff's moderate difficulties with concentration, persistence, and pace were encompassed within his limitation to simple repetitive tasks.  See McDonald v. Astrue, 293 F. App'x 941, 946 (3d Cir. 2008) (hypothetical limiting plaintiff to 'simple, routine tasks' was sufficient to account for a moderate limitation in concentration, persistence and pace); Douglas v. Astrue, No. 09-1535, 2011 WL 482501, at *5 (E.D. Pa. Feb. 4, 2011) (hypothetical limiting claimant to unskilled work adequately accounted for moderate limitations in concentration, persistence, and pace); Reid v. Astrue, No. 08-300, 2009 WL 2710243, at *7 (E.D. Pa. Aug. 28, 2009) ("[B]ecause the record does not suggest that Plaintiff's moderate difficulties in concentration, persistence, and pace would limit Plaintiff's ability to perform simple, repetitive tasks, there was valid justification for the ALJ's omission of more specific references in the hypothetical.").

Because the ALJ thus adequately described Plaintiff's mental limitations, I will overrule his Objection to that portion of the Magistrate's Report and Recommendation.

*Conflict with the Dictionary of Occupational Titles*

As I have discussed, Plaintiff argues that because all the available jobs Mr. Martin identified—as described in the Dictionary of Occupational Titles—require the ability to read and communicate in English, Plaintiff's language limitation should render him unqualified for these positions.  As I have discussed, although the ALJ found that Plaintiff could not communicate in English, the ALJ nonetheless concluded that Mr. Martin's job identification was consistent with the DOT.  Record at 21-22; see 20 CFR §§ 404.1564, 416.964.  The Magistrate upheld this conclusion, to which Plaintiff objects.  *(Doc. No. 29 at 18.)*  I will sustain the Objection.

Since 2000, the SSA has explicitly required the ALJ to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts or

vocational specialists] and information in the [DOT][,] and [e]xplain in the determination or decision how any conflict that has been identified was resolved." Social Security Ruling 00-4p, Policy Interpretation Ruling, Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000); see also 20 C.F.R. § 402.35(b)(1) (Social Security Rulings "are binding on all components of the Social Security Administration"); Burns, 312 F.3d at 127 (endorsing procedures set forth in SSR 00-4p).

  As described in the DOT, all the jobs Mr. Martin identified require the ability to read and communicate in English. For example, ushers "[a]ssist[] patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones . . . ." DOT § 344.677-014. These duties plainly require the ability to communicate with patrons in English. Moreover, the DOT provides that ushers and ten of seventeen unskilled inspector positions at the light level, require the employee to know the meaning of 2,500 words, read at a rate of 95-120 words per minute, write simple sentences, and speak simple sentences using normal word order, present and past tenses. See DOT §§ 344.677-014 (Usher), 518.684-026 (Wax-Pattern Repairer/Inspector), 727.687-062 (Inspector, elec. equip.), 689.687-022 (Cloth Examiner, Hand/ Inspector), 649.687-010 (Paper Sorter & Counter/ Inspector & Counter), DOT 806.687-030 (Inspector, Bicycle (motor-bicycle)), 736.687-018 (Inspector, Live Ammunition (ordnance)), 530.687-010 (Rag Inspector (paper & pulp)), 737.687-066 (Inspector, Shells (ordnance)), 712.684-050 (Inspector, Surgical Instruments (inst. & app.)), 737.684-026 (Inspector, Salvage (ordnance)), DOT App. C (III) (GED, 01 Language Development).

  Ticket takers and the remaining seven unskilled inspector positions require the employee to read 5,000-6,000 words at a rate of 190-215 words per minute, write compound and complex sentences, and speak clearly and distinctly with appropriate pauses and emphasis, pronunciation,

13

variations in word order, and the use of present, perfect, and future tenses. See DOT §§ 344.667-010 (Ticket Taker (amuse. & rec)), 573.687-034 (Sorter/Inspector (brick & tile)), 529.687-114 (Inspector (sugar & conf.)), 559.687-074 (Inspector & Hand Packager (plastic prod.)), 709.687-038 (Spring Inspector II (metal prod., nec)), 727.687-066 (Inspector, Container Finishing (elec. equip.)), 222.687-042 (Inspector, Handbag Frames (leather prod.)), 784.687-042 (Inspector-Packer (hat & cap)), DOT App.  C (III) (GED, 02 Language Development).

In light of Plaintiff's inability to communicate in English, Mr. Martin's testimony that Plaintiff could perform these jobs plainly conflicts with the DOT. Apparently disregarding SSR-04p, the ALJ failed to acknowledge any such conflict, however, concluding without explanation, that the "expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." Record at 22.

In upholding this conclusion, the Magistrate misread controlling authority and ruled that "an unexplained conflict between a VE's testimony and the DOT does not necessarily require reversal." *(Doc. No. 27 at 35* (citing Boone v. Barnhart, 353 F.3d 203, 206 (3d Cir. 2004).*)*

In Boone, the Third Circuit explicitly noted that its decision applied only to disability determinations rendered *before* the enactment of SSR 00-4p in December 2000.  Boone, 353 F.3d at 206 n.6 ("The ALJ in this case issued his decision prior to the enactment of SSR 00-4p. Our opinion on this issue is thus limited to those situations.").  Moreover, Boone endorsed the procedures set forth in SSR 00-4p. Id. at 209 n.14 ("SSR 00-4p sets requirements for an ALJ to follow in any case decided after its enactment."); see also Burns, 312 F.3d at 127 (stating that SSR 00-4p "squarely addresses" how ALJs must resolve conflicts between the DOT and vocational expert testimony).

Although the ALJ's decision was issued years after the enactment of SSR 00-4p, he failed to follow its requirements and explain the conflicts between Mr. Martin's testimony and the DOT. The ALJ did not ask Mr. Martin whether his testimony conflicted with the DOT.  Nor did the ALJ

acknowledge that according to the DOT, Plaintiff appeared to be unqualified for many of the jobs Mr. Martin identified.

In arguing that Mr. Martin's testimony did not conflict with the DOT, Defendant relies on the following passage in SSR 00-4p:

> The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A [vocational expert] . . . may be able to provide more specific information about jobs of occupations than the DOT.

SSR 00-4p. In Defendant's view, because the DOT lists "the maximum requirements of occupations," Plaintiff was not necessarily ineligible for the jobs Mr. Martin identified simply because Plaintiff is unable to read, write, or speak English.

Surely this is a strained reading of the quoted passage. In any event, Defendant fails to recognize that the quoted passage offers one of two "reasonable explanations for conflicts, which may provide a basis for relying on evidence from the [vocational expert or vocational specialist], rather than the DOT information." Id. The passage thus obligated the ALJ to acknowledge and resolve the apparent conflict between the DOT and Mr. Martin's response to the hypothetical question. The ALJ's failure to do so was certainly erroneous. Accordingly, I will sustain Plaintiff's Objection to the Magistrate's failure to apply SSR 00-4p.

    C.  <u>Need for Sedentary Employment</u>

In addition to the light exertion jobs I have discussed, the ALJ identified the sedentary positions of surveillance systems monitor (13,000 nationally and 250 in the region) and inspector (40,000 nationally and 1,500 in the region) that Plaintiff is able to perform despite his impairments. Record at 22.

Plaintiff argued to the Magistrate that under the applicable "medical vocational guidelines," even if Plaintiff could perform these sedentary jobs, the combination of his age, inability to

communicate in English, unskilled prior work, and restriction to sedentary work renders him disabled.  *(Doc. No. 29 at 23)*; see 20 C.F.R. § 404, subpt. P. App. 2 § 200.00(b).  It appears that Plaintiff did not make this argument to the ALJ.  The Magistrate failed to address the argument, in light of her conclusion that Plaintiff is capable of performing the light exertion jobs described above.  Plaintiff objects to her failure. I will defer ruling on this Objection.

As I have discussed, the ALJ's decision that Plaintiff could perform numerous light exertion jobs is not supported by substantial evidence.  On remand, the ALJ must revisit the question of whether Plaintiff is capable of performing those light exertion jobs. The ALJ may at that time also address whether Plaintiff is limited to sedentary work, and, if so, whether his combination of age and impairments nonetheless renders him disabled under the applicable guidelines.

### IV.    Conclusion

The ALJ improperly rejected without explanation the opinion of Dr. Schwarz and improperly relied on Mr. Martin's response to an inadequate hypothetical question.  In addition, the ALJ failed to acknowledge or resolve an apparent conflict between Mr. Martin's testimony and the DOT.  Accordingly, substantial evidence does not support the ALJ's determination that Plaintiff is able to perform work that exists in substantial numbers in the national economy.  Hartranft, 181 F.3d at 360.  I will grant Plaintiff's Motion for Summary Judgment and Request for Review in part and remand this matter to the Commissioner for further review consistent with 42 U.S.C. § 405(g).

An appropriate Order follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*
_____
Paul S. Diamond, J.